## Isadore Berkenfield v. The People of the State of Illinois.

1. CRIMINAL PROCEDURE—*Sufficiency of the Record of Impaneling the Grand Jury.*—Where the record of a criminal proceeding shows affirmatively that the grand jury was called, impaneled and sworn, and a foreman appointed, the necessary intendment is that the grand jury was properly organized.

2. SAME—*Commitments Until Both Fine and Costs Are Paid.*— Where the punishment provided by a statute for an offense is both fine and imprisonment, the court may, upon conviction, order as a part of the judgment, a commitment until both fine and costs are fully paid.

3. SAME—*A Defendant Can Not Complain of Errors Favorable to Himself.*—A party can not complain of errors favorable to himself and by which he is not injured.

4. CRIMINAL LAW—*Obtaining Credit by False Statements by a Member of a Firm.*—A false representation in writing by a partner of the financial standing of his firm is in effect a representation of his own standing.

5. PENAL STATUTES—*Where the Rule of Construction is Not Violated.*—The rule that a penal statute must be strictly construed is not violated by giving to its words a reasonable meaning, according to the sense in which they were intended.

**Indictment for Obtaining Credit by False Pretenses.**—Error to the Criminal Court of Cook County; the Hon. ARBA N. WATERMAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed December 18, 1900.

JAMES R. WARD, attorney for plaintiff in error.

CHARLES S. DENEEN, State's Attorney, for defendant in error; MORITZ ROSENTHAL and JOSEPH A. GRIFFIN, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Plaintiff in error was indicted and convicted of obtaining credit by means of false and fraudulent statements and representations as to the financial standing of the firm of S. Levy & Co. of which he was a member, and thereby obtaining considerable sums of money.

The first ground upon which it is sought to reverse the conviction is that the indictment was not returned by a

legally constituted grand jury. It is said by counsel for plaintiff in error that the record shows the Criminal Court "ordered the jury commissioners of Cook county ' to select fifty persons,' and directed that the jury commissioners within five days after such selection should certify the names of the persons so selected as grand jurors to the clerk of the court, and the clerk of the court was directed to issue and deliver to the sheriff, at least ten days before the next term of the court thereafter, a summons commanding the sheriff ' to summon the persons so selected ' to appear on the fourth Monday of the next term of court ' and constitute a grand jury for said term.' " It is urged that this affirmatively shows the grand jury which returned the indictment was not drawn by the clerk from the grand jury box, as required by statute, and that fifty persons were selected by the jury commissioners and certified to the court, whereas it is claimed that a grand jury under the statute means a body composed of not less than sixteen nor more than twenty-three persons; that the order of court to select fifty persons was in excess of its power. It appears, however, that in the motion made to quash the indictment herein, this objection was not made in the court below, nor was it raised in any form, either upon the motion for a new trial, nor in arrest of judgment, nor in any other way. It is raised for the first time after the record has been filed in this court, not in the original assignment of errors, but in an additional assignment subsequently made by leave of court here. It has been held in this State that such a question should have been presented " either on a challenge to the array of the grand jury or on a motion to have quashed the indictment, for the reason that the indictment was found by a body not legally assembled." Stone v. The People, 2 Scam. 326 (334). To the same effect is Barron v. The People, 73 Ill. 256 (258), where nineteen instead of twenty-three persons, as required by statute, were summoned as grand jurors, and it was held too late to make the objection on appeal, no such objection having been made in the court below. In Williams v. The

People, 54 Ill. 423, where objection was made that the
record did not show affirmatively a proper organization
of the grand jury, it was held sufficient that it recited
that such jury "was called, impaneled and sworn, and a
foreman appointed. The necessary intendment is that a
grand jury so sworn was properly organized." See also,
Sullivan v. The People, 156 Ill. 94 (95). These facts are
recited in the record before us.

Does it, however, appear upon the face of this record that
the grand jury was not selected in the manner provided by
law, as contended by counsel for plaintiff in error? We
think not. The act authorizing the appointment of jury
commissioners (R. S., Chap. 78, Sec. 26 *et seq.*) requires said
commissioners to prepare a list of electors possessing the
necessary legal qualifications, and to "select the necessary
number of names from said jury list" to be written on
separate tickets and placed in a grand jury box. In the
case of grand jurors the statute fixes the number of names
required, whether the judge so certifies or not. The clerk
is then required to repair to the office of the jury commis-
sioners and draw at random the necessary number of names,
and certify them to the sheriff to be summoned. The
order of court in question literally directed the jury com-
missioners to do what the statute requires of them, viz.,
select a number of persons qualified, whose names by the
statute are required to go into the box from which the
names of the grand jurors are to be drawn. The number
of these was erroneously stated in the order, but the num-
ber necessary to constitute a grand jury is fixed by the stat-
ute at twenty-three. (R. S., Sec. 16, Chap. 78.) The order
does not specifically require the clerk to repair to the office
of the jury commissioners and draw the necessary number
of names, but the statute makes it his duty so to do, and no
such order of court is, by the statute, made essential. The
part of the order requiring the commissioners to certify to
the clerk the names so selected, is not necessary, but there
can be no harm in the jury commissioners furnishing the
clerk such a list of the names drawn by him. The order

further requires the clerk to issue a summons commanding the sheriff to summon the persons so selected. The record shows twenty-three persons were in fact so selected, and summoned. The order in question is inaccurately worded no doubt, but it does not show, as is contended by counsel for plaintiff in error, that the grand jury was not drawn as the statute requires.

It is contended that the indictment does not state any offense under the law.

The 97th section of chapter 38, R. S., provides that whoever, by any false representation in writing, signed by him, of his own respectability, wealth or mercantile correspondence or connections, obtains credit and thereby defrauds any person of money, goods, chattels or any valuable thing  *  *  *  shall be fined not exceeding $2,000, and confined in the county jail not exceeding one year." It is urged that in the case at bar the plaintiff in error is not charged and is, by the evidence, not shown to have made the representations complained of concerning "his own" wealth, but that the representations were made by the firm of S. Levy & Co., of which plaintiff in error was a member, of its financial standing. The statement in question is signed " S. Levy & Co., by I. Berkenfield, July 31, 1897." That it was a false statement of the financial condition of the firm, and that it was accepted by the bank to which it was given, and that thereby the members of the firm obtained credit and money, and defrauded the bank, is scarcely disputed, or, at all events, is sufficiently shown by the evidence. It is urged that the words "his own" are not applicable to a statement made by a firm; that these words relate exclusively to that which is his, not his in connection with others. There can, however, be no serious question, we believe, but that a false representation in writing of the financial standing of a firm by a member of such firm, is, in fact, a representation of such member's own standing or wealth. It is, we think, true, that credit extended or money paid to a firm is extended and paid to them as individuals as well as jointly. In Meadowcroft v.

The People, 163 Ill. 56, on page 73, discussing an objection that an indictment did not charge insolvency of a partnership, it is said: "This claim is based upon the theory that a partnership is a legal entity, distinct from and independent of the persons composing it. Whatever may be the law of other States, such is not the law of this State." And again: "The fact that they did their banking business under the name of 'Meadowcroft Bros.,' did not make that mere name a legal entity and endow it with a personal existence distinct from and independent of themselves. * * * If they were solvent, then Meadowcroft Bros. was solvent; and if they were insolvent then Meadowcroft Bros. was insolvent; for there was no such person, either natural or artificial, in existence, as Meadowcroft Bros., distinguished from Charles J. Meadowcroft and Frank R. Meadowcroft." And in the same case (p. 71), in answer to the objection that a penal statute must be strictly construed, it is held that this rule is not violated by giving the words of a statute a reasonable meaning according to the sense in which they were intended.

It is further urged that the judgment and sentence are improper, because not proportioned to the nature of the offense, and in providing that "at the expiration of" a term of imprisonment for one year, the prisoner shall be confined to the county jail "until the fine and costs are fully paid or satisfied at the rate of $1.50 per day." We agree with the state's attorney that in effect the only offense charged was that of obtaining credit by false written pretenses in violation of section 97 above quoted. By agreement of counsel and court, those counts of the indictment based upon any other section of the statute were considered as eliminated. The general verdict of guilty, therefore, could only apply to the remaining counts charging in different ways the same offense, a violation of section 97. Lyons v. The People, 68 Ill. 271. It is said the court had no authority, under an indictment charging substantially a single offense, upon conviction for which both fine and imprisonment are to be inflicted, to order confinement in the county jail for failure

to pay the fine, to commence at the expiration of the term of imprisonment directly inflicted as punishment for the offense itself. But the statute provides (R. S. Chap. 38, Div. 14, Sec. 452) that "when a fine is inflicted the court may order as a part of the judgment that the offender be committed to jail, there to remain until the fine and costs are fully paid, or he is discharged according to law." The punishment provided by the statute in case of convictions for the offense charged in this prosecution is both fine and imprisonment, and as "part of the judgment," the court may order the commitment, as was done. The statute authorizes such commitment until both fine and costs are fully paid. In this case, the court moderated the severity of the statutory sentence by allowing the offender a credit of $1.50 per day to be applied on such fine for each day of additional confinement. If this is an error it is favorable to the prisoner. There is a statutory provision, whether applicable here or not, which permits any person convicted of misdemeanor punishable by fine to be required to work out such fine and costs at the rate of $1.50 per day in a workhouse or on public roads. (R. S., Chap. 38, Sec. 168b.) The plaintiff in error may at any time pay the fine imposed, and he will then be entitled to his discharge. Otherwise the privilege is accorded him of being credited upon the amount, the sum of $1.50 per day for each day of his detention. It has been frequently held that a party can not complain of errors favorable to himself, and by which he is not injured. In Harmison v. City, 153 Ill. 313 (317), it is said "appellants can not complain that the amount of the fine assessed against them is less than the minimum provided for by the ordinance. The error, if such it were, is in their favor." The contention that the sentence in effect constituted a suspension of the fine until the expiration of the year's imprisonment imposed as part of the sentence, is not sustained by reference to authority, nor is it in accordance with the facts. The plaintiff in error has the privilege of paying the fine at any time. Not doing so prior to the expiration of his term of imprisonment under the sentence, his subsequent detention is because of such failure.

The contention that improper evidence was offered to disprove the statements or representations upon which the indictment was founded is argued at considerable length. It must suffice to say that we have carefully considered the evidence in question, and regard the objection as not well founded. To discuss the points raised in detail would unduly extend this opinion and we do not deem it necessary. The evidence certainly tended to establish guilt with reasonable certainty, and this proof was not broken down in behalf of the defendant. Wharton's Crim. Law, Vol. 2, Sec. 1165. The statement made in the name of the firm over defendant's signature, in view of the attendant circumstances in evidence, amply justifies the conclusion of bad faith and intent to defraud. The jury were justified in concluding that the representations were intended to be something more than a mere expression of opinion, and that relying thereon the bank was defrauded.

We find no substantial error in the admission or rejection of evidence, nor in the giving or refusing of instructions. We are convinced the plaintiff in error was fairly tried, and the verdict and judgment were amply warranted by the evidence.

The judgment of the Criminal Court must be affirmed.