102 Ill. App.3d 169 (1981)
429 N.E.2d 612
In re L.H., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
L.H., Respondent-Appellant.)
No. 17184.
Illinois Appellate Court  Fourth District.
Opinion filed December 10, 1981.
Rehearing denied January 8, 1982.
Daniel D. Yuhas and Gary S. Rapaport, both of State Appellate Defender's Office, of Springfield, for appellant.
*170 Thomas J. Difanis, State's Attorney, of Urbana (Robert J. Biderman and Debra K. Buchman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
JUSTICE MILLS delivered the opinion of the court:
The General Assembly has said that in delinquency proceedings there are to be two hearings  one adjudicatory, one dispositional.
Not one hearing. Two hearings.
And the Juvenile Court Act spells out the legislative intent with pristine clarity.
Now to the case at our bench.
Petitions were filed alleging that respondent was a delinquent minor in that he had committed nine residential burglaries. On March 26, 1981, respondent appeared in court and stipulated to three of the nine counts, with the State agreeing to drop the remaining charges. Judge Steigmann asked what agreement the parties had reached:
"[PROSECUTOR]: Your Honor, we'd like to get a presentence report done by the Champaign County Probation Department in this matter and continue the cause as is convenient with the Court.
THE COURT: Okay. Mr. Hooker [defense counsel], is that your understanding?
MR. HOOKER: It is, Your Honor. The only agreement is to dismiss the remaining counts."
The court accepted the parties' agreement, found that respondent had committed three burglaries and dismissed the other six counts. The court made no further findings but directed the Champaign County Probation Department to prepare a report on respondent.
On April 30, 1981, a hearing was held at which Judge Steigmann stated that he had read and considered the report from the probation department. At this hearing, Nancy Stevens, director of the Learning Community in Champaign, testified concerning respondent's participation in that program, and respondent himself testified regarding his desire to graduate from high school and get full-time employment. At the close of the hearing, Judge Steigmann entered a finding that it was in the best interests of respondent and the public that he be adjudicated a delinquent and made a ward of the court. He then explained why he thought probation would be an inappropriate disposition and ordered respondent committed to the Department of Corrections.

LEGISLATIVE INTENT
Even a cursory examination of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, pars. 701-1 to 708-4) reveals that the procedure contemplated by the Act was flagrantly violated in this case. A court is first to *171 hold an adjudicatory hearing, wherein it considers only whether the respondent is a delinquent. (Ill. Rev. Stat. 1979, ch. 37, par. 704-6.) After that hearing, the court is to make its determination whether respondent is a delinquent. (Ill. Rev. Stat. 1979, ch. 37, par. 704-8(1).) Upon finding him a delinquent, the court should determine whether the minor's and the public's best interests require that he be made a ward of the court. If the court so finds, then it "shall adjudge him a ward of the court and proceed at an appropriate time to a dispositional hearing." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 37, par. 704-8(2). See also Ill. Rev. Stat. 1979, ch. 37, par. 705-1(1).
 1 Thus, it is abundantly clear that the Act contemplates holding two separate hearings  adjudicatory and dispositional  and that the dispositional hearing is to be held only after the adjudications of delinquency and wardship have been made. In re Prough (1978), 61 Ill. App.3d 227, 376 N.E.2d 1078; People v. Brady (1972), 7 Ill. App.3d 404, 287 N.E.2d 537.
 2 In the case at bar, the court continued the adjudicatory hearing and then held a hybrid hearing, not contemplated by the Act, after which it made decisions as to both adjudication and disposition. Besides the fact that such a procedure flouted the clear mandates of the Act, it created possibilities of evidentiary problems. At an adjudicatory hearing, the usual rules of evidence in criminal proceedings apply. (Ill. Rev. Stat. 1979, ch. 37, par. 704-6.) But at a dispositional hearing, the court can consider all evidence helpful in determining the question of disposition, including evidence not competent for purposes of the adjudicatory hearing. (Ill. Rev. Stat. 1979, ch. 37, par. 705-1(1).) Thus, a combined hearing presents the probability that evidence will be presented which is incompetent for purposes of adjudication, though it would properly be considered in making a dispositional decision. People v. Brady (1972), 7 Ill. App.3d 404, 287 N.E.2d 537.

AGREED PROCEDURE
 3 We disagree, however, with respondent's contention that the procedural flaws below require a reversal. Of primary importance is the fact that his attorney not only failed to object to this procedure but, in fact, joined in the request to continue the decision on adjudication until the time of the dispositional hearing. We can only presume that he took this position upon the hope that further evidence would come to light that would avoid an adjudication of delinquency, which was virtually assured once the trial judge found that respondent had committed three residential burglaries. Such evidence, of course, did not come forth. However, respondent cannot have it both ways by now arguing that the procedure which he and the State requested was prejudicial to him.
This court has recently been confronted with a number of cases *172 involving the kind of unified hearing held in this case. We have held that where no objection has been made below, the trial court's order following the hearing will be upheld "where there is no resulting prejudice." (In re Prough (1978), 61 Ill. App.3d 227, 231, 376 N.E.2d 1078, 1082.) Quite often, however, it is impossible to determine whether there has been prejudice, for the judge gives no indication whether his decision on adjudication rests to any extent upon evidence admissible only for purposes of disposition. Considerable judicial energy is therefore wasted because of trial courts' failure to follow the clear dictates of the Juvenile Court Act.

COMMITMENT
Defendant also argues that the trial court abused its discretion in committing him to the Department of Corrections. Section 5-10(1) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 705-10(1)) provides that a delinquent minor may be committed to the Department if the court finds (1) that his parents are unable, for other than financial reasons, to care for, protect, train, or discipline him, and (2) the minor's and the public's best interests will not be served by an alternate disposition. Respondent points out that this was the first delinquency proceeding ever instituted against him. In addition, he relies heavily upon testimony that he had shown no truancy problems in the four months prior to the hearing.
 4 The State, on the other hand, emphasizes that in 1979 respondent was unable to conform to the terms of probation and that the probation office itself recommended commitment. In addition, it should be observed that the probation office's report indicates that respondent was uncooperative with the office in making himself available for interviews to prepare the report. Considering all these factors, we cannot say that it was an abuse of discretion for the trial court to determine that respondent should be committed to the Department of Corrections. In re Stead (1978), 59 Ill. App.3d 1012, 376 N.E.2d 689.
Affirmed.
GREEN, P.J., and LONDRIGAN, J., concur.